IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHOEMONEY MEDIA GROUP, INC., | ) | Case No. 8:09cv131 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KEYEN FARRELL and JOHN J. FARRELL, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO EXTEND DEADLINE FOR RESPONDING TO DEFENDANTS' MOTION TO DISMISS, AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

**I. INTRODUCTION**

The Defendants have already admitted that they infringed on Plaintiff's registered trademark. (K. Farrell Affid., Filing No. 11-2, ¶ 20; J. Farrell Affid., Filing No. 11-3, ¶ 18; P. Cooper Declaration, Ex. "A").  They argue, however, that the Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction because their unauthorized use of the trademark was innocent, they had never heard of Plaintiff before March 31, 2009, and they have had only "attenuated" and "unintentional" contact with Nebraska and its residents.

The Defendants refuse to consent to limited jurisdictional discovery, and instead they ask the Court to simply accept the statements in their Affidavits as true, and prohibit the Plaintiff from having any meaningful opportunity to inquire about the assertions in those Affidavits or otherwise gather additional facts demonstrating that the Affidavits are misleading, incomplete, and contain materially false statements.  Limited discovery in this case, as requested by the Plaintiff, will reveal additional information relevant to the personal jurisdiction issues and will help establish that the Defendants

1

intentionally infringed on Plaintiff's mark, were familiar with the Plaintiff long before March 31, 2009 (and before they began using Plaintiff's trademark), and that the Defendants specifically directed their activities and harm at Nebraska. Limited discovery is also likely to uncover additional contacts the Defendants have had with Nebraska and its residents---contacts that the Defendants elected not to disclose to the Court in their Affidavits despite the obvious relevance to the personal jurisdiction analysis. Accordingly, the Plaintiff respectfully requests an Order extending its deadline to respond to Defendants' Motion to Dismiss for lack of personal jurisdiction so that it may conduct limited discovery on the issues raised by Defendants' Motion to Dismiss and develop additional facts to support a finding of personal jurisdiction.

## II.  ARGUMENT

### A.  Jurisdictional Discovery is appropriate and should be liberally allowed.

"It is clear that a court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction." Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 (9th Cir. 1977) (multiple citations omitted). The general rule is that jurisdictional discovery is to be liberally allowed:

> A court has discretion to allow discovery when considering a motion to dismiss for lack of personal jurisdiction. Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts generally allow jurisdictional discovery unless the plaintiff's claim is "clearly frivolous."

SoftwareArt Corp. v. Gopalakrishnan, 2008 WL 2876395 *3 (D.N.J. July 22, 2008) (internal citations omitted). "Discovery…should be granted where pertinent facts are controverted…" Id. See also Steinbauch v. Cutler, 518 F.3d 580 (8th Cir. 2008) (district court "should not have dismissed [plaintiff's] action…without permitting him to take

2

some jurisdictional discovery to establish whether general personal jurisdiction would be justified").

In Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978), the United States Supreme Court expressly approved of allowing a plaintiff to conduct discovery relating to jurisdictional issues:

> [Discovery is not] limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits…For example, where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.

Oppenheimer, 437 U.S. at 351 & n.13 (citations omitted).

**B.    The Plaintiff stated a prima facie case of personal jurisdiction in its Complaint.**

**1.    Legal Standard**

This Court has previously cited Calder v. Jones, 465 U.S. 783 (1984), many times in summarizing the applicable standard for personal jurisdiction. For example, in Denenberg v. Djordevic, 2007 WL 4525011 (D.Neb. Dec. 18, 2007) (Bataillon, J.), the plaintiff was an Omaha plastic surgeon who posted copyrighted pictures of his patients on his web site, and the defendant was a California plastic surgeon who copied the plaintiffs' photographs and posted them on his own competing web site. The California defendant moved to dismiss for lack of personal jurisdiction and submitted evidence that he had never conducted business in Nebraska, never solicited business from Nebraska, and never had "any contacts whatsoever with Nebraska or its residents." Id. at *2. In denying the defendant's motion to dismiss, Judge Bataillon stated the following standard for analyzing a motion to dismiss for lack of personal jurisdiction:

> Jurisdiction over a person is proper when the defendant's intentional conduct in another state is calculated to cause injury to the plaintiff in the forum state. When a defendant's intentional and tortious

3

actions are expressly aimed at the forum, they must "reasonably anticipate being haled into court there."

Denenberg v. Djordevic, 2007 WL 452011 (D.Neb. Dec. 18, 2007) (Bataillon, J.) (citing Calder, 465 U.S. at 790-91).[1]  Judge Bataillon found that the Nebraska plaintiff "need not go to California to seek redress from a person, though remaining in California, knowingly causes him injury in Nebraska," and that the California defendant "should have anticipated being haled into court in Nebraska" when he infringed on the plaintiff's copyrights.  Id. at * 5. Judge Bataillon has applied this same standard in other cases as well.  E.g., ProxiBid, Inc. v. BigGavel.com, Inc., 2008 WL 2165184 at *4-6 (D.Neb. May 21, 2008).

Judge Kopf has applied the same standard in denying a motion to dismiss for lack of personal jurisdiction.  In Denenberg v. Berman, U.S. Dist. Ct., D. Neb., 4:02cv7, Filing No. 32, pp. 4-5, Judge Kopf stated:

> When an intentional act is aimed at the forum with knowledge that the brunt of the injury will be suffered in the forum, then the intentional tortfeasor must "reasonably anticipate being haled into court" in that forum.  Here, Plaintiff has alleged intentional copyright infringement.  Defendant knew that the brunt of the injury from his copying would fall upon Plaintiff in Nebraska.

Denenberg v. Berman, Filing No. 32 at *4-5.

The principles applied in these cases illustrate that two issues relevant to the Court's analysis of Defendants' motion to dismiss for lack of personal jurisdiction are: (1) did the Defendants commit an intentional tort and/or intend to infringe on Plaintiff's

---

[1] The present case presents an even stronger case of personal jurisdiction than Denenberg, because in Denenberg the only factor supporting personal jurisdiction was the defendant's intentional, tortious activity directed at Nebraska.  The defendant's competing web site was a "passive" web site that did not form the basis of the defendant's contact with the forum, and the internet contacts were therefore not considered. Denenberg, 2007 WL 4525011 at *5.  Here, the Farrell Defendants not only committed intentional, tortious conduct directed at Plaintiff in Nebraska, but they also own and operate interactive web sites from which they have admittedly entered into transactions with Nebraska residents.  (See Keyen Farrell Affidavit, Filing No. 11-2, ¶¶ 26, 29-32; see also Jeremy Schoemaker Declaration, ¶¶ 24-25 & Ex. "D").

4

trademark?;[2] and (2) were the Defendants' actions taken with knowledge that the harm would be felt here in Nebraska?  As discussed below, the allegations in Plaintiff's Complaint clearly state a prima facie case under this standard.

The Defendants argue the Plaintiff should not be permitted to conduct jurisdictional discovery because it failed to state a prima facie case for personal jurisdiction.  The Defendants are wrong.  Under notice pleading, the Plaintiff was not required to set forth in its Complaint every fact showing that the Defendants are subject to personal jurisdiction in this state to state a prima facie case.  Rather, the Plaintiff was merely required to set forth "a short and plain statement of the grounds for the court's jurisdiction."  Fed.R.Civ.P. 8(a)(1).  See also Davis v. Howse, 2003 WL 21317289 (N.D.Ill. June 5, 2003) ("notice pleading does not require that a complaint plead facts conclusively establishing personal jurisdiction").  "For purposes of a prima facie showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor."  Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519 (8th Cir. 1996).

---

[2]   The Defendants argue that "whether the Farrells allegedly intentionally infringed on Plaintiff's trademark goes well beyond the issue of personal jurisdiction to the merits of Plaintiff's claims, and therefore, it is not an appropriate topic for jurisdictional discovery." (Filing No. 14, p. 5 n.2).  Plaintiff's argument ignores the standard for personal jurisdiction discussed above.

The Defendants' argument that intent is irrelevant at this stage of the case is somewhat perplexing when considered in light of the contents of their Affidavits submitted in support of their Motion to Dismiss.  The Defendants went to great lengths in their Affidavits to disavow any intentional wrongdoing.  In support of their argument that their infringement of Plaintiff's trademark was innocent, and not intentional, Defendants Keyen Farrell and John Farrell state they had no knowledge of Plaintiff or its trademark until March 31, 2009; they did not intend to infringe upon the "Shoemoney" trademark in any way; they relied upon Google to prevent them from using Plaintiff's trademark in the text of their ads; they did not take any action to circumvent federal law and/or Google policy to enable the "Shoemoney" mark to appear in the text of their ads; and they first learned of the "Shoemoney" trademark on March 31, 2009. (See Keyen Farrell Affid., Filing No. 11-2, ¶¶ 17, 19, 21, 23; John Farrell Affid., Filing No. 11-3, ¶¶ 15, 17, 19, 21).

The Defendants seek to convince the Court in their Brief and Affidavits that they did not intentionally infringe upon Plaintiff's trademark, yet they seek to prevent the Plaintiff from conducting any discovery to demonstrate the falsity of those assertions.  If the Defendants are inviting the Court to simply "take their word for it" that they are "innocent" infringers and were unfamiliar with the Plaintiff when they infringed on its trademark, the invitation should be declined.

The Plaintiff's Complaint contains sufficient allegations to state a prima facie case of personal jurisdiction.  The Defendants' argument that there is only "one conclusory allegation" in the Complaint that relates to personal jurisdiction is simply incorrect.  (See Defendants' Brief, Filing No. 14, p. 4).  The Plaintiff alleges that it is well-known in the online marketing industry and that persons familiar with Plaintiff know that it is located in Nebraska.  (Complaint, ¶¶ 6-7, 10-12).  The Plaintiff alleges that the Defendants, Keyen and John Farrell, are familiar with Plaintiff and the business it operates and are aware that it is headquartered in Nebraska.  (Id. ¶¶ 10, 18).  The Plaintiff further alleges that the Defendants infringed on Plaintiff's trademark with full knowledge that their practices violated federal trademark laws and with the specific intent of intercepting and diverting Plaintiff's customers to the Defendants' competing web site; that the Defendants intended to deceive consumers into believing that Defendants' products/services were affiliated with or sponsored by the Plaintiff; and that the Defendants' conduct was also motivated by a variety of other improper purposes.  (Id., ¶¶ 22-23, 28-29, 57, 67).  The Plaintiff specifically pleaded that the Defendants conduct business within the State of Nebraska and that the Defendants directed their harm at Plaintiff with the knowledge that such harm would be felt by Plaintiff within the State of Nebraska.  (Id., ¶ 5).  Taking the facts in the light most favorable to Plaintiff, as the Court is required to do (see Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519 (8th Cir. 1996)), these facts are clearly sufficient to state a prima facie case of personal jurisdiction under the governing standard described above.

6

**C.   Facts currently known to the Plaintiff indicate that the Defendants' affidavits are misleading, incomplete, and contain false statements, and discovery is required to investigate those issues.**

The Defendants have presented Affidavits in an attempt to defeat personal jurisdiction, but there are many indications that their Affidavits are incomplete, incorrect, and/or misleading. The Defendants assert, for example, that they "had no knowledge of the existence of Shoemoney Media Group, Inc. or its trademark, Shoemoney, until March 31, 2009." Jurisdictional discovery, however, should be permitted to allow Plaintiff to establish that the Defendants received correspondence from Plaintiff – well before March 31, 2009 – advising Defendants that their use of the "Shoemoney" mark constituted a trademark infringement. (Jeremy Schoemaker Declaration, ¶¶ 11-13). Plaintiff's communications to the Defendants were signed by Plaintiff's principal, Jeremy Schoemaker, and his Nebraska address was prominently displayed on such communications. Nowhere in their Affidavits do the Defendants mention these communications from Plaintiff, and Plaintiff is entitled to conduct discovery regarding Defendants' receipt of said correspondence. The raw access logs (apache access_logs) for www.myincentivewebsite.com, which can be obtained from the web host Lunar Pages pursuant to Subpoena, may show that the message was viewed by one of the Defendants on a specific date and time.

The Defendants state in their Affidavits that they "have not targeted Nebraska residents through mailings, phone calls or otherwise." (Keyen Farrell Affid., Filing No. 11-2, ¶ 14). But limited discovery is certain to show that the Defendants made the conscious choice to market their products and/or services directly to Nebraska residents. When a person establishes an AdWords account through Google, the person follows an online process to determine the geographical areas where they want their

7

ads to appear. For example, an advertiser may affirmatively elect for their ads to appear throughout the entire United States or they may target specific states or metropolitan areas. (Jeremy Schoemaker Declaration, ¶¶ 19-20 & Ex. C). If a person selects the entire United States, they may then select specific states to exclude from their target audience. (Id.). Jeremy Schoemaker prepared a short video demonstrating this process. (Id., Ex. "C"). The Defendants' own evidence establishes that their advertisements using Plaintiff's registered trademark were being displayed to Nebraska residents. (Keyen Farrell Affid., Filing No. 11-2, ¶¶ 26, 29-32). Thus, it is clear that the Defendants made the conscious decision when establishing their account to market their goods and/or services to Nebraska and to target Nebraska residents. Discovery will show the exact geographical areas targeted by the Defendants, and will confirm that the Defendants made the conscious decision to target Nebraska residents with their ads.

Other aspects of the Defendants' affidavits are also non-sensical, and the Plaintiff should be permitted leave to conduct discovery regarding those topics. For example, the Defendants were using the "Shoemoney" trademark to market their website which is designed to help people make money on the Internet. The Defendants specifically chose to use the word "Shoemoney," and other terms that include "shoemoney," to market their website. The Defendants went to the trouble of manually setting up four separate ad groups using the Plaintiff's trademark to trigger their advertisements. Plaintiff and its founder, Jeremy Schoemaker, are widely known in the industry as experts at making money on the Internet and running profitable internet businesses. (Aaron Baker Declaration, ¶ 9). There would be no reason for the Defendants to use the "Shoemoney" trademark to market their own competing goods

8

and/or services unless the Defendants knew of the existence of "Shoemoney" and its excellent reputation within the industry. (Id., ¶¶ 13-17). The Defendants have not disclosed why they chose to use the "Shoemoney" trademark in their ads and they essentially suggest that it was mere coincidence that they selected the "Shoemoney" trademark to market their competing product. They even suggest that they had never heard of the Plaintiff or its trademark during the time they were using the "Shoemoney" trademark in their ads. The Plaintiff should be given the opportunity to conduct discovery on issues such as why the Defendants decided to use Plaintiff's trademark in their advertisements to demonstrate the intentional nature of the infringement.

Defendants also refer in their affidavits to Google's policy of preventing advertisers from using the trademark of another party in their advertisements. The protection offered by Google to trademark owners is designed to warn persons such as the Defendants that their proposed use of a trademarked term would constitute trademark infringement and a violation of Google policies and to prevent the unlawful use of a third party's trademark. (See, e.g., Baker Declaration, ¶¶ 10-12; Schoemaker Declaration, ¶¶ 8-9). More specifically, when a person attempts to create an advertisement that uses the term "Shoemoney" in its text – like the ads created by the Defendants – Google provides a specific and detailed warning to the advertiser that the proposed advertisement would constitute trademark infringement. (Baker Declaration, ¶¶ 10, 12). In fact, Google advises the advertiser of the specific word or term that is trademarked. (Id.). The warning screen that is viewed by persons attempting to infringe on a trademark appears substantially as follows:



(Baker Declaration, ¶12).

The Defendants acknowledge that Google's policies and procedures are designed as described above, but they point the finger at Google and claim that their infringement of the "Shoemoney" trademark is Google's fault because Google failed to prevent the "Shoemoney" trademark from appearing in their advertisements. The Google AdWords system, however, prohibits advertisers from doing what the Farrells say happened in this case. We have attempted to re-create the advertisements using the "Shoemoney" trademark, but the Google AdWords system has rejected those proposed ads each time because they contain a trademarked term. This strongly suggests that, contrary to the representations made in their Affidavits, the Defendants took affirmative action to circumvent the Google policy (and federal trademark law) so that the trademarked term "Shoemoney" would appear in the text of their ads. (E.g., Baker Declaration, ¶¶ 10-12). Keyen Farrell is an employee of Google who works in its AdWords division, and he may be aware of methods to circumvent the Google policies and procedures regarding the use of trademarked terms. The Plaintiff should be allowed to question the Defendants about how they created the ads using the

10

"Shoemoney" trademark so that the Court and parties may learn the methods used by the Defendants to circumvent Google's trademark protection system and thereby refute the Defendants' affidavits.

In addition to the facts set forth above relating to the specific jurisdiction analysis, limited discovery is also appropriate to assist in establishing that the Court may exercise general jurisdiction over the Defendants. The Defendants argue in their Motion to Dismiss that the Court may not exercise general jurisdiction over them, and they base their entire argument on statistics related to the number of visitors to their www.myincentivewebsite.com web site, and sales from that web site, between January 30, 2009 and March 31, 2009. The Defendants, however, failed to reveal to the Court their other continuous, systematic contacts with the State of Nebraska that would subject them to general jurisdiction. The Defendants make the representation on their web site, www.myincentivewebsite.com, that they have earned hundreds of thousands of dollars each year, dating back to at least 2004, by using incentive web sites.[3] (Schoemaker Declaration, ¶ 24 & Ex. "D"). Curiously, the Defendants did not reveal the existence or identity (domain) of those web sites they operate; they did not reveal the number of Nebraska residents who visited any of those web sites; and they did not reveal the volume of transactions entered into through those web sites with Nebraska residents over the past five plus years. The Defendants' omissions from their affidavits are an obvious attempt to lead the Court to believe that the activities set forth in their affidavits are the only contacts the Defendants have had with the State of Nebraska.

---

[3] Incentive web sites offer consumers a monetary incentive (e.g., $5.00) to subscribe to a service, request a loan quote, apply for a credit card, etc. In exchange, the credit card company or loan provider pays the incentive web site owner a fixed amount (e.g. $15) for each person who applies for the credit card or loan. Thus, the incentive web site is interactive and allows consumers to enter into business transactions, and the owner of the incentive web site then directly pays the consumer for participating. (See Schoemaker Declaration, Ex. "E"; see also Complaint, Ex. "B").

11

But the Defendants' own web site tells a different story. The Plaintiff should be permitted to conduct discovery regarding the Defendants' other web sites and their continuous, systematic contacts with Nebraska residents through those web sites, since those facts were not disclosed in the Defendants' affidavits.

### D.  The Specific Discovery Sought

The Defendants criticize the Plaintiff for not setting forth in its Motion the specific jurisdictional discovery it seeks to conduct. Plaintiff has not yet drafted those discovery requests and should not be punished for not preparing the discovery requests before the Court has granted leave to conduct that discovery. If the Defendants had been willing to agree to *any* jurisdictional discovery, Plaintiff certainly would have worked with Defendants to agree to an acceptable scope of discovery --- but Plaintiff refused to agree to *any* jurisdictional discovery at all.

So that there is no doubt about the scope of discovery sought by Plaintiff, Plaintiff will briefly set forth below a list of the types of discovery requests it intends to issue, if leave is granted, so that the Court may determine the appropriateness of these categories of requests:

#### 1. Interrogatories and Requests for Production of Documents to Keyen and John Farrell

Plaintiff anticipates serving fewer than twenty interrogatories, and a similarly small number of requests for production of documents, upon each of the Farrell Defendants. These requests will be directed toward the issues of whether the Defendants intentionally infringed Plaintiff's trademark, whether the Defendants directed their harm at Nebraska, whether the statements made in Defendants' affidavits are false, misleading, and/or incomplete, and regarding Defendants' other contacts with Nebraska residents such as through the other incentive web sites they have operated

for years, which generated substantial revenue (but which were not addressed in Defendants' affidavits).

### 2. Subpoena to Lunar Pages

Lunar Pages is the web host for Defendants' web site, www.myincentivewebsite.com. Raw access logs from Lunar pages may help establish that the Defendants received correspondence from Plaintiff long before March 31, 2009 advising them that: (a) Defendants were infringing on Plaintiff's trademark; and (b) Plaintiff was located in Nebraska. The Defendants have denied receiving such correspondence and denied any knowledge of Plaintiff and its trademark until March 31, 2009.

### 3. Subpoena to Google

Plaintiff also seeks to serve a Subpoena upon Google requesting the following types of documents: (a) a raw log of external websites visited by Keyen Farrell while at work (to show he visited www.shoemoney.com, www.shoemoneymedia.com, or related web sites, and thus had knowledge of Plaintiff prior to March 31, 2009); (b) a list of all IP addresses that accessed the Farrells' AdWords account (so that those addresses can be compared to the addresses that have visited Plaintiff's web sites); (c) the AdWords access records/logs for the Farrells' account, to confirm that the Defendants affirmatively chose to use the "ShoeMoney" terms in their account and manually set up the Shoemoney ad groups, and specifically targeted Nebraska residents with their ads; and (d) any documents in Google's possession regarding the method used by the Defendants to circumvent Google policy and display the "Shoemoney" trademark in the text of their advertisements.

### 4. Depositions

After completion of the limited written discovery described above, Plaintiff seeks to depose Keyen Farrell to inquire about the many questionable statements in his Affidavit and to establish that he was familiar with Plaintiff and its trademark prior to March 31, 2009, and that he intentionally infringed on Plaintiff's trademark with knowledge that the harm would be felt in Nebraska. Plaintiff is willing to conduct this deposition by telephone or video-conference to alleviate the travel expense that would otherwise be incurred for said deposition. Plaintiff is also willing to limit the duration of Keyen Farrell's deposition to a reasonable duration, such as no more than four hours.

### 5. Other Discovery

It is not yet known if a deposition of John Farrell will be necessary to determine the extent of his involvement in the infringements. Documents received pursuant to requests for production or Subpoena may also lead Plaintiff to the conclusion that a third party deposition is necessary to establish relevant facts discussed above regarding Defendants' purposeful availment to Nebraska. Again, Plaintiff is willing to limit any such deposition to a reasonable duration and take steps to prevent undue cost/burden to the parties in connection with said discovery.

## IV. CONCLUSION

The evidence strongly suggests that the Affidavits presented by Keyen and John Farrell are misleading, incomplete, and contain false statements. The Court should not be forced to decide the Defendants' Motion to Dismiss without the benefit of receiving information and documents that paint a more complete, and more accurate, picture of the Defendants' familiarity with Plaintiff, their intentional infringement of Plaintiff's

trademark, and the Defendants' purposeful availment of the jurisdiction of Nebraska courts.

For the foregoing reasons, the Plaintiff respectfully requests an Order extending their deadline to respond to Defendants' Motion to Dismiss to August 3, 2009, and permitting them to conduct limited discovery regarding the issues set forth above relating to personal jurisdiction.

Dated this 11th day of May, 2009.

Respectfully submitted,

SHOEMONEY MEDIA GROUP, INC., Plaintiff

By:  /s/  Patrick S. Cooper
Troy F. Meyerson, # 21756
Patrick S. Cooper, #22399
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102-2663
(402) 341-6000

## CERTIFICATE OF SERVICE

I certify that on this 11th day of May, 2009, I filed the foregoing via the Court's CM/ECF electronic filing system, which sent notification of same to the following:

J. Scott Paul
Michaela A. Smith
McGrath, North, Mullin & Kratz
Suite 3700, First National Tower
1601 Dodge Street
Omaha, NE 68102

 /s/  Patrick S. Cooper

W509519.04